## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASIL SIMON IN HIS CAPACITY AS RECEIVER FOR FUTURENET GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GTR SOURCE, LLC AND STEPHEN W. BIEGEL, IN HIS CAPACITY AS NEW YORK CITY MARSHAL, BADGE No. 27 <br><br> Defendants. | Docket No.: |

## COMPLAINT

Plaintiff Basil Simon ("Plaintiff" or "Receiver"), in his capacity as the court-appointed receiver for FutureNet Group, Inc. ("FutureNet"), by and through his attorneys, White and Williams LLP, as and for his complaint against Defendants GTR Source, LLC ("GTR") and Stephen Biegel, in his capacity and New York City Marshal, Bade No 27 ("Marshal Biegel" and, together with GTR, the "Defendants"), alleges:

## NATURE OF THE ACTION

1.      This is an action to recover $127,182.29 (the "Funds") that was improperly restrained by GTR and, thereafter, improperly seized by Marshal Biegel, in connection with their unlawful efforts to collect upon a judgment (the "Judgment") against FutureNet.  GTR procured the Judgement in February 2018 and immediately issued a restraining notice to Comerica Bank, a Texas-based bank with branches in Texas, Michigan and California, but no branches or retail banking operations in New York.  As a result, FutureNet's accounts in Michigan were frozen. Thereafter, GTR issued a notice to garnishee and directed Marshal Biegel to improperly serve a levy and demand upon Comerica Bank and extort turnover of the Funds to Marshal Biegel and, ultimately, to GTR.  The Defendants' actions violated New York's Civil Practice Law and Rules

(the "CPLR"), the well-established Separate Entity Rule, the New York City Civil Court Act (the "CCA"), and the rules and guidelines governing the authority of a New York City Marshal to enforce judgments and give rise to the claims asserted in this action.

## THE PARTIES

2.      Plaintiff Basil Simon is the court-appointed receiver for FutureNet, a corporation duly organized under the laws of Michigan with its principal place of business located at 12801 Auburn St., Detroit, Michigan.  It does not maintain an office in New York.

3.      Basil Simon, a citizen and a resident of the State of Michigan, was appointed Receiver of FutureNet by the Circuit Court for the County of Wayne, State of Michigan.

4.      Upon information and belief: (i) GTR is a New Jersey limited liability company with its principal place of business located at 1006 Monmouth Ave., Lakewood, New Jersey; (ii) GTR is authorized to and, in fact, does conduct business in New York and maintains an office at 111 John Street Ste. 1210, New York, New York 10038; and (iii) GTR's members are citizens and residents of New York, New Jersey or Connecticut and no member is a citizen or resident of Michigan.

5.      Defendant Stephen W. Biegel is a New York City Marshal, Badge No. 27.  Upon information and belief, he is a citizen and a resident of the State of New York and, in his capacity as a New York City Marshal, he maintains a single office located at 109 West 38 Street, Suite 200, New York, New York 10018.

## JURISDICTION

6.       This Court has original jurisdiction over this matter based upon diversity (a) because the Plaintiff is not a citizen of the same state as any Defendant or its members and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

**VENUE**

7.      Venue is proper because the Defendants maintain offices within the Southern District of New York, regularly conduct business within this district and a substantial part of the events giving rise to the claims asserted herein occurred within this district.

**FACTS**

**A.      GTR Obtains the Judgment.**

8.      At all times material hereto, FutureNet provided infrastructure services in areas such as construction, technology, perimeter security, and energy/environment to government and commercial customers.

9.      Defendant GTR is a merchant cash advance company that provides hard-money lending to small businesses in desperate need of cash under the guise of so-called "Purchase and Sale of Future Receivables Agreements."

10.      Pursuant to one such agreement dated November 13, 2017 (the "Agreement"), GTR agreed to advance $200,000 to FutureNet purportedly in exchange for the purchase of $291,800 in future receivables, which was to be repaid in just 18 weeks through fixed daily payments, each in the amount of $3,999.00.  This translates into an effective interest rate in excess of 200% per annum.

11.      On or about November 15, 2017, after deducting $25,000 in purported fees, GTR actually advanced only $175,000 to FutureNet.

12.      On November 22, 2017, GTR began debiting the daily payments via ACH withdrawals from one of the accounts (the "Comerica Accounts") that were opened and maintained by FutureNet at a Michigan branch of Comerica Bank.

3

13.     Thereafter, FutureNet continued to make the daily payments due under the Agreement until February 2018.  By that time, FutureNet had paid GTR over $195,000 in less than three months.

14.     In early February 2018, FutureNet had insufficient funds to make the daily payments.

15.     As a result, GTR declared a default and filed an Affidavit of Confession and, on February 14, 2018, GTR obtained a judgement (previously defined as the "Judgment") against FutureNet in the amount of $120,154.92 which consisted of the unpaid balance of the loan ($95,849.00), attorney's fees ($23,962.25) and interest/costs ($118.87).

16.     The Judgment was entered in an action titled *GTR Source, LLC v. FutureNet Group, Inc., et. ano.*, Supreme Court of the State of New York, County of Orange, Index No. EF001776-2018 (the "State Court Action").

**B.      GTR begins collection efforts.**

17.     Armed with the Judgment, on February 14, 2018, GTR, through its attorney Ariel Bouskila, served an Information Subpoena with Restraining Notice (the "Restraining Notice") addressed to Comerica Bank at 500 Woodward Avenue, MC 3391, Detroit, Michigan 48226.

18.     A copy of the Restraining Notice is attached hereto as Exhibit 1.

19.     Upon receipt of the Restraining Notice, Comerica Bank restrained the Comerica Accounts and thereby prevented FutureNet from withdrawing the Funds.

20.     On February 22, 2018, GTR was advised that its Restraining Notice was unlawful because (i) Comerica Bank maintained non branches in New York; (ii) Comerica Bank was not subject to the general jurisdiction of New York; and (iii) FutureNet's bank accounts were opened

and maintained in Michigan.  *See* Email and attachment dated February 22, 2018, attached hereto as Exhibit 2.

21.     On the same day, GTR was advised that its Restraining Notice was tortiously interfering with the superior UCC rights of FutureNet's senior secured lenders.  *See* Email and attachment dated February 22, 2018, attached hereto as Exhibit 3.

22.     GTR was also advised that if it did not immediately withdraw its improper Restraining Notice, FutureNet would not be able to make payroll.  *See* Exhibit 2.

23.     As a direct result of GTR's failure to withdraw its improper Restraining Notice, FutureNet was unable to make payroll and defaulted on its obligations to its senior secured lenders.

24.     Despite knowing that the Comerica Accounts were opened and maintained by FutureNet at a bank branch in Michigan and that New York did not have jurisdiction over the Funds, GTR doubled down on its improper conduct.

25.     On February 26, 2018, GTR's attorney, Steven Berkovitch, issued a Notice to Garnishee that named Comerica Bank as the garnishee and directed that New York City Marshal Biegel issue and serve a Notice and Levy and Demand on Comerica Bank (the "First Levy and Demand") c/o Corporate Creations Network, Inc. ("Corporate Creations"), 15 North Mill Street, Nyack, New York.

26.     A copy of the First Levy and Demand, together with the Notice to Garnishee, is attached hereto as Exhibit 4.

27.     Upon information and belief, from his office in New York City, Marshal Biegel mailed the First Levy and Demand, together with the Notice to Garnishee, to Comerica c/o Corporate Creations in Nassau County.

C.     **The Motion to Vacate and GTR's Continued Collection Efforts.**

28.     By Order to Show Cause dated February 28, 2018, FutureNet moved in the State Court Action to vacate the Judgment based upon procedural and jurisdictional defects in the Affidavit of Confession and the resulting Judgment.

29.     By Decision and Order dated March 13, 2018, the State Court denied FutureNet's application "without prejudice to their seeking relief by way of plenary action."

30.     Upon information and belief, immediately after the Court denied FutureNet's motion to vacate the Judgment, GTR again directed that Marshal Biegel make a further demand upon Comerica Bank.

31.     Specifically, on March 14, 2018, Marshal Biegel served a second levy and demand (the "Second Levy and Demand" and, together with the First Levy and Demand, the "Levies and Demands") upon Comerica Bank via fax.  The fax was sent from Marshal Biegel's New York City's Marshal's Office to Comerica Bank's office in Detroit, Michigan.

32.     A copy of the Second Levy and Demand is attached hereto as Exhibit 5.

33.     Comerica Bank did not immediately respond and, upon information and belief, GTR's attorneys harassed Comerica Bank to comply with the Second Levy and Demand until finally, on or about March 21, 2018, Comerica Bank issued a bank check to "NYC Marshal Biegel" in the amount of $127,182.29, inclusive of accrued interest and Marshal Biegel's poundage fees.

34.     Upon information and belief, the bank check was sent to Marshal Biegel's attention at his New York City Marshal's Office via Federal Express.

35.      Upon information and belief, upon receipt of the bank check, Marshal Biegel deducted poundage in the amount of $6,051.53 from the Funds and remitted the balance to GTR.

## PROCEDURAL BACKGROUND

36.     On May 7, 2018, Basil Simon was appointed as the Receiver for FutureNet Group, Inc., and FutureNet Security Solutions, LLC (the "Receivership Entities").

37.     A copy of the Receivership Order is attached hereto as Exhibit 6.

38.     The primary purpose of the Receiver is "to achieve the highest return to secured creditors, unsecured creditors, and equity holders (i.e., owners)." *See id*, ¶ 3(p).

39.     The Receiver was appointed to protect the first-priority secured interests of Invest Detroit, a certified Community Development Financial Institution (and a non-profit 501(c)(3) organization), as well as the interest of second-lien priority holders Plymouth Venture Partners II, LP and Plymouth Management Company. *See id*., ¶ 3(c), (o).

40.     Together, as of April 26, 2018, the secured creditors held a claim against the Receivership Entities in the principal amount of not less than $2,499,317.58. *See id*., ¶ 3(f).

41.     The Receiver was also appointed to protect the secured creditors against various judgments and enforcement actions taken by the unsecured creditors of the Receivership Entities, including the Judgment obtained by GTR. *See id*., ¶ 3(i).

42.     To achieve these goals, the Receiver, among other things, was empowered to defend and/or institute suits including, without limitation, actions challenging the garnishment of funds from the Receivership Entities by GTR.  *See id.*, at ¶ 13 (f).

43.     On June 29, 2018, the Michigan Court issued an order authorizing the Receiver to employ White and Williams LLP as Special Counsel for the Receivership.

44.     A copy of Order authorizing the Receiver to retain White and Williams LLP is attached hereto as Exhibit 7.

## FIRST CAUSE OF ACTION

### (Wrongful Restraint and Execution Against GTR)

45.     Plaintiff repeats and incorporates each of the allegations set forth above.

46.     Any person who procures, directs or assists in the commission of a wrongful act by an officer in issuing an execution, or in making a levy or sale thereunder, is liable to the person injured by the act.

47.     In attempting to collect upon the Judgment, GTR committed at least three wrongful acts in that it: (i) improperly restrained the Funds; (ii) directed service of the Levies and Demands in violation of the CPLR and Marshal Biegel's statutory authority and (iii) directed the issuance of the Levies and Demands to obtain turnover of the Funds in violation of Marshal Biegel's statutory authority and the Separate Entity Rule.

**A.     GTR's Improper Restraint of the Funds.**

48.     In the Restraining Notice, GTR, by and through its attorneys, represented that pursuant to New York law, Comerica Bank was "forbidden to make or suffer any sale, assignment or transfer of, or any interference with [the Funds]" and that "disobedience of this restraining notice or false swearing or failure to comply with this subpoena may subject you to fine and imprisonment for contempt of Court."

49.     GTR further assured Comerica Bank that, at the very least, "[n]on-compliance with the information subpoena shall first subject you to penalties under CPLR 2308(b)."

50.     At the time these statements of law were made, GTR knew they were false because GTR's attorneys knew that (i) issuance of the Restraining Notice violated New York's Separate Entity Rule and (ii) New York did not have jurisdiction over Comerica Bank to compel

compliance with the Restraining Notice or subject Comerica Bank to fines, penalties or imprisonment for non-compliance.

51.     Under New York's well-settled Separate Entity Rule, each branch of a bank is considered a separate entity for judgment enforcement purposes such that judgment creditors are prohibited from restraining or seeking the turnover of funds in accounts opened and maintained at branches outside of the State of New York.

52.     Comerica Bank is a Texas banking association that maintains branches in Texas, Michigan, California, Arizona and Florida.  Its principal place of business is in Dallas, Texas and, upon information and belief, it does not maintain any branches or conduct any retail banking operations in the State of New York.

53.     GTR knew that the Restraining Notice violated the Separate Entity Rule because it knew that FutureNet had opened and maintained the Comerica Accounts at a Michigan branch of Comerica Bank, and, further, that the Restraining Notice sought to restrain the Funds maintained in those accounts.

54.      Moreover, by emails dated February 22, 2018, FutureNet advised GTR that: (i) the Restraining Notice violated the Separate Entity Rule; (ii) under well-settled law from the United States Supreme Court, New York did not have general jurisdiction over Comerica Bank to enforce the Restraining Notice; and (iii) GTR's restraints were interfering with FurtuNet's rights to the Funds as well as the rights of FurtureNet's senior creditors.

55.     In conscious disregard of the law and the rights of FutureNet and its senior creditors, GTR refused to withdraw the Restraining Notice and, upon information and belief, it continued to falsely represent to Comerica Bank that New York law forbade Comerica Bank from transferring or otherwise disbursing the Funds and, further, that New York law required

Comerica Bank to comply with the Restraining Notice or be subject to fines, imprisonment or civil penalties.

56.     GTR made these false statements in the Restraining Notice with the malicious intent of compelling Comerica Bank to comply with the Restraining Notice, freeze FutureNet's accounts and, thereby, cause FutureNet to suffer economic harm so that it would be forced to turn over the Funds or otherwise satisfy the Judgment.

57.     Comerica did, in fact, freeze the Comerica Accounts in response to the Restraining Notice.

58.     By reason of the foregoing, the Funds were improperly restrained and unavailable to FutureNet to pay its ordinary course expenses and/or satisfy obligations owed to FutureNet's senior creditors, thereby causing injury to FurtureNet and its priority creditors.

**B.      The Improperly Issued Levies and Demands.**

59.     Pursuant to Section 1609(1)(a) of the CCA, the authority of a marshal for the City of New York to execute and levy upon property in satisfaction of a judgment is limited to the geographical boundaries of the City of New York.

60.     By operation of CCA § 1609(1)(a) and the Separate Entity Rule, with respect to bank accounts, a marshal's power to execute and levy is limited to bank accounts opened and maintained at branches within New York City.

61.     Upon information and belief, Comerica Bank does not maintain any branches or conduct any retail banking operations within the State of New York, let alone a branch within the five boroughs of New York City.

62.     GTR knew that the Comerica Accounts had been opened and maintained by FutureNet at a Comerica Bank branch in Michigan.

63.     GTR knew, should have known or consciously disregarded the fact that Marshal Biegel did not have the authority to levy upon any bank accounts opened and maintained at Comerica Bank.

64.     Nonetheless, in conscious disregard for New York law and the rights of FutureNet and its senior creditors, GTR issued the Notice to Garnishee and directed that Marshal Biegel levy upon the Comerica Accounts, which he did.

65.     As a result of the improperly issued Levies and Demands, Comerica Bank turned over the Funds to Marshal Biegel.

66.     Upon information and belief, after Marshal Biegel deducted his poundage fee, he turned the balance of the Funds over to GTR or its attorneys.

**C.     <u>Improper Service of the Levies and Demands.</u>**

67.     Pursuant to CCA §§ 1609(1)(b) and (2), the Appellate Divisions, First and Second Departments, are responsible for promulgating rules and regulations concerning the performance of official duties of marshals, but, in no event, can the power of a marshal to make levies and demands to enforce a judgment exceed the powers of Sheriffs in like cases.

68.     Pursuant to CPLR § 5232(a), a Sheriff is required to serve a levy and demand in the same manner as a summons, "except that such service shall not be made by delivery to a person authorized to receive service of a summons solely by a designation filed pursuant to a provision of law other than rule 318."

69.     Consistent with these limitations, the New York City Marshals Handbook of Regulations, as approved by the Appellate Divisions (the "Marshals Handbook"), specifically provides that "a marshal's jurisdiction and authority to serve executions against personal property, as well as other mandates and processes, extends through and is limited to the

geographical boundaries of the City of New York" and, with respect to service of levies upon a bank, it specifically requires that "an execution with notice to garnishee must be served on an officer of the bank."

70.     The Notice to Garnishee did not comply with CPLR § 318, CCA § 1609(a)(1) or the requirements set forth in the Marshal's Handbook because it directed the Levies and Demands to be served upon Comerica Bank c/o Corporate Creations in Nassau County.

71.      Corporate Creations is not an officer of Comerica Bank and, upon information and belief, although Comerica Bank may list Corporate Creations as its registered agent pursuant to New York's General Business Law, it has not made the required filings with Nassau County to designate Corporate Creations as it's agent for service of process pursuant to CPLR § 318.

72.     Accordingly, service of the Levies and Demands upon Corporate Creations was not effective service under the CPLR, the CCA or the rules and regulations set forth in the Marshals Handbook and the Levies and Demands were void and ineffective.

73.     GTR knew, should have known or recklessly disregarded the fact that service upon Corporate Creations of the Levies and Demands was not in compliance with the CPLR, the CCA or the rules and regulations set forth in the Marshals Handbook and that, as a result, the Levies and Demands were void and ineffective.

74.     Nevertheless, in conscious disregard of New York law and the rights of FutureNet and its senior creditors, GTR directed that Marshal Biegel issue the Levies and Demands, serve them upon Corporate Creations in Nassau County and compel Comerica Bank to turn over the Funds, thereby causing injury to FutureNet and its other priority creditors.

75.    By reason of the foregoing, GTR is liable to the Plaintiff for damages in an amount of not less than $127,182.29, together with statutory pre-judgment interest accruing as of February 26, 2018.

## SECOND CAUSE OF ACTION

### (Wrongful Execution – Marshal Biegel)

76.    Plaintiff repeats and incorporates each of the allegations set forth above.

77.    Any person who procures, directs or assists in the commission of a wrongful act by an officer in issuing an execution, or in making a levy or sale thereunder, is liable to the person injured by the act.

78.    In attempting to collect upon the Judgment, Marshal Biegel committed at least three wrongful acts in that he: (i) improperly issued the Levies and Demands that sought the turnover of funds maintained in bank accounts opened and maintained at the Michigan branch of a Texas-based bank; (ii) improperly served the Levies and Demands upon Corporate Creations and (iii) falsely represented that the Levies and Demands were properly issued under the color of New York when they were not.

**A.    The Improperly Issued Levies and Demands.**

79.    As alleged above, pursuant to CCA § 1609(1)(a), the authority of a marshal for the City of New York to execute and levy upon property in satisfaction of a judgment is limited to the geographical boundaries of New York City.

80.    By operation of Section 1609(1)(a) and the Separate Entity Rule, with respect to bank accounts, a marshal's power to execute and levy is limited to bank accounts opened and maintained at branches within New York City.

81. Upon information and belief, Comerica Bank does not maintain any branches or conduct any retail banking operations within the State of New York, let alone a branch within the five boroughs of New York City.

82. Mashal Biegel knew, should have known or consciously disregarded the fact that Comerica Bank did not have any branches in New York City and that, therefore, the Notice to Garnishee necessarily sought the turnover of funds outside the territorial boundaries of his authority.

83. Indeed, the Notice to Garnishee was addressed to Comerica Bank c/o Corporate Creations in Nassau County. Thus, on the face of the Notice to Garnishee, Marshal Biegel knew or should have known that GTR was directing that he levy upon property beyond the territorial limits of his authority.

84. Nevertheless, Marshal Biegel issued the Levies and Demands, served them upon Corporate Creations in Nassau County and compelled Comerica Bank to turn over the Funds.

85. By issuing the Levies and Demands to seize funds maintained in a bank beyond the territorial boundaries of New York City, Marshal Biegel knowingly, intentionally and with conscious disregard for the law and rights of FutureNet and its senior creditors, exceeded his authority to execute and levy.

86. Indeed, by email dated March 22, 2018 at 9:37 a.m., FutureNet advised Marshal Biegel that he had exceeded his authority in issuing (and serving) the Levies and Demands. A copy of the March 22 email (without attachment) is annexed hereto as Exhibit 8.

87. Levies and Demands issued and served beyond a marshal's authority are void and ineffective.

88.     Marshal Biegel knew that the issuance of Levies and Demands had exceeded his statutory authority, but, in conscious disregard of the law and rights of FurtureNet and its senior creditors, upon receipt of the Comerica bank check, he deducted his poundage fee and remitted the balance to GTR.

**B.      Improper Service of the Levies and Demands.**

89.     Pursuant to CCA § 1609(1)(b), CPLR § 5232(a) and the rules and regulations set forth in the Marshal's Handbook, a marshal is required to serve a levy and demand upon an officer of a bank and only within the geographical boundaries of New York City.

90.     By serving the Levies and Demands upon Corporate Creations in Nassau County, Marshal Biegel knowingly, intentionally and in conscious disregard of the rights of FutureNet and its senior creditors, he exceeded his authority to execute and levy.  As a result, the Levies and Demands were void and ineffective and Marshal Biegel's seizure and collection of the Funds was improper, thereby causing injury to FutureNet and its senior creditors.

**C.      False Statements.**

91.     Marshal Biegel knew that the issuance and service of the Levies and Demands exceeded his powers and authority under the CCA, the CPLR and the rules and regulations in the Marshals Handbook.  Nevertheless, in each of the Levies and Demands, Marshal Biegel intentionally and falsely represented that he was acting within his authority under New York law and that Comerica Bank was required by CPLR 5232(a) to "immediately turn over" the Funds to him.

92.     By making such misrepresentations, Marshal Biegel intended to compel Comerica to turn over the Funds which it did.

93.    By reason of the foregoing, Marshal Biegel is liable to the Plaintiff for damages in an amount of not less than $127,182.29, together with statutory pre-judgment interest accruing as of February 26, 2018.

### THIRD CAUSE OF ACTION

### (Conversion)

94.    Plaintiff repeats and incorporates each of the allegations set forth above.

95.    By restraining and seizing the Funds as described above, the Defendants exercised control over the Funds to the detriment of FutureNet who was the owner of the Funds and to FutureNet's senior creditors who had a priority interest in the Funds.

96.    By reason of his appointment as the receiver in of FutureNet, the Plaintiff is the successor-in-interest to FutureNet's interest in the Funds.

97.    By reason of the foregoing, the Defendants are jointly and severally liable to the Plaintiff in amount not less than $127,182.29, together with statutory pre-judgment interest accruing as of February 26, 2018.

### FOURTH CAUSE OF ACTION

### (Trespass to Chattel)

98.    Plaintiff repeats and incorporates each of the allegations set forth above.

99.    The Funds in the Comerica Accounts were property of FutureNet.

100.    By reason of its unlawful restraints and seizure of the Funds as described above, the Defendants intentionally interfered with FutureNet's use of the Funds resulting in damages to FutureNet and the senior creditors who had a priority interest in the Funds.

101.    By reason of his appointment as receiver of FutureNet, the Plaintiff is the successor-in-interest to FutureNet's interest in the Funds and the claims asserted herein.

16

102.    By reason of the foregoing, the Defendants are jointly and severally liable to the Plaintiff in amount not less than $127,182.29, together with statutory pre-judgment interest accruing as of February 26, 2018.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the entry of judgment against GTR and Marshal Biegel, jointly and severally, awarding Plaintiff:

(i)     $127,182.29 in direct damages, plus 9% statutory prejudgment interest from February 26, 2018;

(ii)    Consequential damages resulting from the unlawful Restraining Notice and Levies and Demands;

(iii)   Punitive damages;

(iv)    Reasonable attorneys' fees and costs; and

(v)     Any such further relief as the Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedures.

Dated:  February 15, 2019

WHITE AND WILLIAMS LLP

By:_____

Shane R. Heskin
Stuart J. Wells
7 Times Square, Suite 2900
New York, NY 10036-6524
(215) 864-6329
heskins@whiteandwilliams.com
*Attorneys for Plaintiff*