**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

────────────────────────────

**BASIL SIMON, in his capacity as**
**Receiver for FutureNet Group, Inc.**

                    **Plaintiff,**

      **- against -**

**GTR SOURCE, LLC et al.,**

                  **Defendants.**

────────────────────────────

**19cv1471 (JGK)**

**MEMORANDUM ORDER &**
**OPINION**

**JOHN G. KOELTL, District Judge:**

The plaintiff Basil Simon, in his capacity as Receiver for
judgment debtor FutureNet Group, Inc. ("FutureNet"), has alleged
claims for wrongful execution, conversion, and trespass to
chattels against judgment creditor GTR Source, LLC ("GTR") and
New York City Marshal Stephen Biegel (the "Marshal"), the latter
of whom executed a state levy on property belonging to
FutureNet. The plaintiff alleges that the Marshal had no
jurisdiction to levy on FutureNet's assets outside New York
City. Jurisdiction in this case is based on complete diversity
of citizenship among the parties pursuant to 28 U.S.C. § 1332.

The Receiver now moves for summary judgment granting its
requested relief; the Marshal and GTR cross-move for summary
judgment denying the Receiver's requested relief and seeking to
dismiss the case. GTR also moves for attorney's fees and costs
under a contract entered into between FutureNet and GTR.

1

**I.**

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998). "When there are cross motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 382 F. Supp. 3d 312, 317 (S.D.N.Y. 2019).

## II.

The following facts are undisputed unless otherwise noted.

FutureNet is a Michigan corporation that provides infrastructure services for construction, technology, perimeter security and energy/environment projects to both government and commercial customers. Pl. 56.1 Stmt. ¶¶ 1-2. Around November 13, 2017, FutureNet and GTR entered into an agreement in which GTR would advance FutureNet $200,000 in exchange for $291,800 in

3

future FutureNet accounts receivable. Id. at ¶¶ 4-5. FutureNet
made payments under the agreement until February 2018, at which
point FutureNet had paid GTR around $195,000. Id. at ¶ 6. Then,
in February 2018, GTR declared a default under the agreement and
filed an affidavit of confession of judgment in the New York
State Supreme Court, Orange County. Id. at ¶ 7. On February 14,
2018, GTR obtained a judgment in the state court proceeding
against FutureNet for $120,154.92, which consisted of the unpaid
balance of the agreement, attorney's fees, and costs. Id. at
¶¶ 8-9. On the same day, GTR, through its attorney, served a
restraining notice at a branch of Comerica Bank in Detroit,
Michigan, a bank at which FutureNet funds were kept. Id. at
¶¶ 10-11. The restraining notice directed that, pursuant to New
York law, Comerica, a Texas corporation with its principal place
of business in Texas and doing limited business in New York, was
forbidden from transferring any property belonging to FutureNet.
Id. at ¶¶ 12-13, 15-16, 19. At the time the restraining notice
was issued, FutureNet stated in an email to GTR that the
restraining notice was unlawful because Comerica had no bank
branches in New York, Comerica was not subject to personal
jurisdiction in New York, FutureNet's account were maintained
entirely in Michigan, and the restraining notice interfered with
superior UCC rights of FutureNet's senior secured lenders. Id.
at ¶ 22.

On February 26, 2018, GTR issued an Execution with Notice to Garnishee that named Comerica as the garnishee and that directed New York City Marshal Stephen Biegel to serve a Notice and Levy and Demand on Comerica c/o Corporate Creations Network, Inc., a corporation located in Nyack, New York in Rockland County. Id. at ¶ 23. The Levy directed Comerica to turn over to the Marshal all of FutureNet's property in Comerica's control. Id. at ¶ 28.

On February 28, 2018, FutureNet moved in the open state court proceeding in Orange County to vacate the judgment based on alleged procedural and jurisdictional defects in the affidavit of confession and also moved to strike all enforcement devices. Id. at ¶ 29. On March 13, 2018, the state court denied FutureNet's application, holding that FutureNet would need to pursue any requested relief by a separate plenary action, and that "Defendant's remaining contentions [were] without merit." GTR Source, LLC v. FutureNet Grp., Inc., 98 N.Y.S.3d 500(Table), at *6 (Sup. Ct. Mar. 13, 2018). The state court order denying FutureNet's requested relief was "without prejudice to their seeking relief by way of plenary action." Id. The next day, on March 14, 2018, a woman named Alona in the New York City Marshal's office delivered an amended levy by fax to a Comerica office in Detroit for the turnover of $127,082.29 in FutureNet assets. Pl.'s 56.1 Stmt. ¶¶ 32-36. Around March 21, 2018,

Comerica issued a check to Marshal Biegel at his New York office for $127,082.29, satisfying FutureNet's judgment for $120,154.92 and the Marshal's poundage fee, at which point GTR filed a satisfaction of FutureNet's judgment in state court. Id. at ¶¶ 37-42.

On April 27, 2018, FutureNet's senior creditors commenced an action against FutureNet in Michigan state court seeking, among other things, the appointment of a receiver over FutureNet's assets. Id. at ¶¶ 43-44. Basil Simon was appointed receiver over all general intangibles of FutureNet with the purpose of achieving return for secured and unsecured creditors and equity owners of FutureNet. Id. at ¶¶ 45-47. In his role as the Receiver, Simon moved on August 24, 2018 in the New York state court action in Orange County to vacate the judgment against FutureNet; the Receiver also sought restitution of the funds that were collected by the Marshal. Id. at ¶ 51. On November 26, 2018, the state court denied the Receiver's motion on jurisdictional and procedural grounds. GTR Source, LLC v. FutureNet Grp., Inc., 89 N.Y.S.3d 528, 541 (Sup. Ct. 2018).

On February 25, 2019, the Receiver commenced this action by filing a Complaint that asserted causes of action for wrongful execution and restraint against GTR, wrongful execution against the Marshal, conversion against both defendants, and trespass to chattels against both defendants. The Receiver then moved for

summary judgment and the defendants cross-moved for summary judgment and to dismiss the Complaint.

## III.

The defendants argue that the Rooker-Feldman doctrine bars this action. Because the Rooker-Feldman doctrine concerns this Court's subject matter jurisdiction, "the Court has an independent obligation to assure itself that it has the subject matter jurisdiction to decide the matter." Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc., 941 F. Supp. 2d 406, 415 (S.D.N.Y. 2013); see Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010) (Rooker-Feldman is jurisdictional).

There are four requirements that must be met in order for the Rooker-Feldman doctrine to bar the federal court's subject-matter jurisdiction over a suit:

> First, the federal-court plaintiff must have lost in
> state court. Second, the plaintiff must complain of
> injuries caused by a state-court judgment. Third, the
> plaintiff must invite district court review and
> rejection of that judgment. Fourth, the state-court
> judgment must have been rendered before the district
> court proceedings commenced – i.e. Rooker-Feldman has
> no application to federal-court suits proceeding in
> parallel with ongoing state-court litigation.

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quotation marks and alterations omitted). "The first

and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." Id.

With respect to the procedural prongs of the Rooker-Feldman analysis, the Receiver clearly lost in state court because, by order dated November 26, 2018, the state court denied the Receiver's motion to vacate the judgment and order restitution and that proceeding took place before the Receiver brought this case in federal court on February 25, 2019. See GTR Source, 89 N.Y.S.3d at 540-41; Compl. ¶¶ 1, 102. The procedural requirements of the Rooker-Feldman doctrine are therefore met. See Hoblock, 422 F.3d at 85, 89.

However, the defendants cannot satisfy the second requirement, which is "the core requirement from which the others derive[.]" Hoblock, 422 F.3d at 87. "[T]he applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007) (emphases in original).

In this case, the Receiver brought a motion in the state court action in Orange County to vacate the judgment by confession on various procedural grounds and to seek restitution in the sum of $127,028.29 for the Marshal's out-of-City

execution on the judgment. Memorandum of Law in Support of Motion to Vacate at 22, <u>GTR Source, LLC v. FutureNet Grp., Inc.</u>, Index No. 001776/2018 (Sup. Ct. Aug. 24, 2018). The New York State Supreme Court, Orange County denied the Receiver's requested relief on the grounds that 1) there had been subject-matter jurisdiction to enter the judgment by confession; 2) the Receiver lacked standing to contest the alleged procedural deficiencies with the judgment; and 3) that "[u]nder the circumstances, the Court need not reach the remaining issues briefed by the parties," which included the plea of restitution for the Marshal's execution on the judgment outside New York City. <u>GTR Source</u>, 89 N.Y.S.3d at 534, 540-41.

Although the Receiver did not receive its requested relief in the state court, namely vacatur of the judgment by confession and restitution, the injuries the Receiver complains about in this action were not caused by the state court decisions. In this federal action, the Receiver concedes that the judgment by confession is valid but complains about the manner in which the Marshal executed on the judgment. But the manner in which the Marshal executed on the judgment was in no sense caused by the state court decisions. While the judgment debtor and the Receiver failed to obtain relief in the state court orders of March 13, 2018 and November 26, 2018, their alleged injury was not caused by the failure to obtain relief but rather by the

alleged improper execution by the Marshal which was itself not caused by the state court orders. Indeed, the Marshal's execution on the judgment predated the November 26, 2018 order.[1] Therefore, the second prong of the Rooker-Feldman doctrine is not satisfied. See, e.g., King v. New York City Emps. Ret. Sys., 595 F. App'x 10, 11 (2d Cir. 2014) (finding that a NYCERS decision denying pension benefits predated an Article 78 proceeding and therefore the Article 78 proceeding did not cause the federal court plaintiff's injury); McKithen, 481 F.3d at 98 ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings.").

Because the second requirement of the Rooker-Feldman doctrine is not met in this case, the Court does have subject-matter jurisdiction and may proceed to the merits. With respect to the merits, there are cross motions for summary judgment, and therefore the Court will address the plaintiff's and the defendants' motions in turn. See Andy Warhol Found., 382 F. Supp. 3d at 317.

---

[1] Similarly, the Receiver is not complaining about any injury caused by the earlier state court order on March 13, 2018, in which FutureNet's motion to vacate the judgment on various procedural grounds was denied. See GTR Source, 98 N.Y.S.3d 500(Table), at *1.

**III.**

The Receiver brings actions for wrongful execution, conversion, and trespass to chattels, and therefore in order to prevail on its motion for summary judgment, the Receiver must show that there is no dispute as to any material fact and that a reasonable jury could find that the plaintiff has proven each element of its claims by a preponderance of the evidence. However, the Receiver has failed to demonstrate that it is entitled to summary judgment because it has failed to demonstrate each element of its four causes of actions: 1) wrongful execution and wrongful restraint against GTR, 2) wrongful execution against the Marshal, 3) conversion against both defendants, and 4) trespass to chattels against both defendants.

A cause of action for wrongful execution arises when someone seeks to execute on the property of another on some authority that the executor knew or should have known was void or unlawful. Underlying this tort is the theory that, where a judgment was void, "[t]he judgment and execution afforded no protection to the defendants because following vacatur they became trespassers ab initio and liable for the consequences of their acts as if the judgment and execution never existed." Silberstein v. Presbyterian Hosp. in N.Y., 463 N.Y.S.2d 254, 256 (App. Div. 1983), recalled and vacated on different grounds,

1983 WL 955177. Where a judgment debtor seeks to recover for wrongful execution on an otherwise valid judgment, the plaintiff judgment debtor may prevail only upon a showing of negligence on the part of the executor and damages to the judgment debtor. See Bam Bam Entertainment LLC v. Pagnotta, 75 N.Y.S.3d 804, 808-11 (Sup. Ct. 2018).

In this case, GTR sought and obtained an execution and levy from the New York State Supreme Court, Orange County and directed the Marshal to execute on the funds belonging to FutureNet possessed by Comerica. The gravamen of the plaintiff's Complaint is that the Marshal exceeded his jurisdictional authority by serving an execution and levy beyond the bounds of New York City and that the entity upon which the Marshal served the execution and levy, Comerica, was not subject to personal jurisdiction in New York. However, there is no dispute that the funds recovered by the Marshal were used to extinguish the debtor's valid debt owed under the valid court judgment. Therefore, the Receiver, who stood in the shoes of the debtor, suffered no damages in this case. The debt owed by FutureNet to GTR, which the Receiver does not dispute is a valid debt, has now been satisfied as a result of the Marshal's execution and a satisfaction of judgment has been entered. Moreover, the Receiver has only as much power to bring lawsuits as the entity in receivership. See Eberhard v. Marcu, 530 F.3d 122, 132 (2d

Cir. 2008). Because the Receiver has not made a showing of damages it is not entitled to recover on a theory for wrongful execution as a matter of law at the summary judgment stage. The Receiver's motion for summary judgment on its claims for wrongful execution against GTR and the Marshal is therefore denied.

With respect to the claims for conversion and trespass to chattels against both defendants, the motion for summary judgment as to those two claims can be addressed simultaneously. See DeAngelis v. Corzine, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014) ("A claim for trespass to chattels overlaps with a claim for conversion: Where a defendant merely interfered with plaintiff's property then the cause of action is for trespass, while denial of plaintiff's dominion, rights or possession is the basis of an action for conversion.") (quotations and alterations omitted). To recover on a claim for trespass to chattels or conversion, a necessary element is harm to the plaintiff. See id. at 283.

For similar reasons that summary judgment is denied on the wrongful execution claims, summary judgement is denied for conversion and trespass to chattels because the Receiver has failed to establish that the Receiver sustained any damages in this case. There is no dispute that FutureNet owed a valid debt to GTR, that the debt was reflected in a valid state court

judgment, and that the funds upon which the Marshal executed were used to satisfy that valid judgment. Therefore, the Receiver has failed to show that it was harmed by the seizure of the funds.

For these reasons, the Receiver's motion for summary judgment is denied in full.

**IV.**

Turning next to the defendants' motions for summary judgment, summary judgment is properly granted on the grounds that, as a matter of New York law, a judgment debtor plaintiff cannot state a cause of action against a judgment creditor or a New York City Marshal when the Marshal executes on an admittedly valid judgment outside his jurisdictional boundaries of New York City and there is no showing of negligence on the part of the Marshal or damages to the judgment debtor.

The New York Court of Appeals has not addressed directly the question whether a New York City Marshal may be held personally liable for levying on an out-of-city bank account to satisfy a valid debt. "When the highest state court has not ruled directly on an issue presented, a federal court must make its best estimate as to how the state's highest state court would rule in the case." Joseph v. Deluna, No. 15-cv-5602, 2018 WL 1474398, at *6 (S.D.N.Y. Mar. 23, 2018). "In determining how the highest state court would resolve a particular issue, courts

14

can consider all of the resources the highest court of the state could use: a forum state's inferior courts, decisions from sister states, federal decisions, and the general weight and trend of authority." Id.

Two principles of New York law are useful in framing the question in this case. First, in New York, under certain circumstances, a judgment creditor, as opposed to a judgment debtor, may be able to hold a Marshal or Sheriff liable if a Marshal or Sheriff fails to fulfill a statutory mandate to satisfy a judgment entered in favor of the plaintiff judgment creditor. See Wang v. Bartel, 624 N.Y.S.2d 735, 736 (App. Term 1994); see also Eckstein v. Mass. Bonding & Ins. Co., 24 N.E.2d 114, 117 (N.Y. 1939) ("If the sale was void for failure of the marshal to comply with statutory requirements, it might have been treated as a nullity and plaintiffs [creditors] might have issued an execution on their judgment and levied on and sold the property to satisfy their claim.").

Second, a Marshal, or the private entity on whose behalf the Marshal acts, is not personally liable for actions within the scope of his authority when directed by a valid court order. See, e.g., Maldonado v. New York Cty. Sheriff, No. 05-cv-8377, 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("When a sheriff is presented with a mandate of the court, he is not bound to inquire into the proceeding leading up to the approval and the

granting of the order, and is justified as a ministerial officer, in obeying it according to its terms.") (quotations and alterations omitted); Treiber v. Mouriocourt, 258 N.Y.S. 206, 207 (City Ct. 1932) ("It is well-settled law in this state that where a sheriff or a marshal acts in obedience to the mandate of the court he is not personally responsible, nor is the party at whose instance the mandate was issued responsible for his acts.").

Despite the existence of these well-established principles, there is nothing to suggest that the New York Court of Appeals, were it to take up the direct question presented here, would find that a judgment debtor, as opposed to a judgment creditor, could hold a New York City Marshal personally liable for executing on a valid judgment outside of New York City and where the proceeds of the execution are used to satisfy a valid debt.

In fact, the New York State Supreme Court, Kings County recently addressed this precise question in a thoughtful and well-reasoned opinion and found that a judgment debtor could not maintain a suit against a New York City Marshal for out-of-City execution absent a showing of actual damages to the judgment debtor and negligence on the part of the Marshal. In Pagnotta, a Florida LLC brought an action against a New York City Marshal alleging that the Marshal should be held personally liable for levying on the LLC's bank account, located outside New York

City, in order to satisfy a valid confession of judgment. 75 N.Y.S.3d at 805. Just as in this case, the Marshal acted pursuant to a valid state court judgment and levied against an out-of-state bank account, which the bank honored. Id. at 806. The plaintiff LLC brought an action for wrongful execution against the Marshal on the grounds that the "Marshal did not have authority to levy on the Plaintiff's bank account located outside of New York City to satisfy the Plaintiff's valid debt because the Plaintiff asserts that the Marshal's levy authority is limited to New York City." Id. at 807.

In Pagnotta, the court first held that "there is simply no factual basis to find that the Marshal knew or should have known that the debt owed by the Judgment Debtor and the Plaintiff is invalid," and that to hold that Marshals would be required to evaluate the validity of a judgment "would be to create an expensive and unmanageable burden not intended or otherwise codified by the legislature and one not recognized in over 170 years of established jurisprudence." Id. at 808 & n.1. Similarly, the court noted that "New York City Marshals are neutral government officers free of any conflict of interests. They act under the direction of the court and may rely on the presumption of regularity that attaches to a court order." Id. at 809. The court noted that, in this regard, Marshals are governed by statute and subject to oversight and discipline from

the Appellate Division. See id. at 810. Thus, if the plaintiff prevailed, it would amount to an "inappropriate" sanction of the Marshal because "[i]t is simply not for this Court to create a private remedy where one was never intended by the legislature, where both a forum and a mechanism for addressing alleged abuse of authority already exists and certainly not in a case where the Marshal has executed on a facially valid confession of judgment." Id. at 811.

The Pagnotta court did note that a Marshal could be held liable for damages "caused by negligently executing a valid order of seizure or warrant of eviction," but that in a case in which damages could not be established because there "simply is no dispute that the Judgment Debtor and Plaintiff owe the money that was levied upon," holding the Marshal liable would not be appropriate because it would amount to "having the Marshal pay the Plaintiff's debt." Id. at 810-11. Implicit in the reasoning of Pagnotta is that the execution on a valid judgment outside of New York City to satisfy the debtor's valid debt, standing alone, does not constitute negligence on the part of the New York City Marshal, but that there must be some other act of negligence in the execution before a judgment debtor may hold the Marshal personally liable. To hold otherwise would result in a windfall for the judgment debtor at the expense of the public official.

The Receiver has pointed to no material fact that distinguishes this case from Pagnotta, and indeed the facts of juthis case appear to be entirely on all fours with the facts of Pagnotta.[2] In both cases, the undisputed facts are that the plaintiff sought to hold a New York City Marshal personally liable for levying on an out-of-City bank account to satisfy a

---

[2] The Receiver argues that Pagnotta was wrongly decided because Pagnotta failed to apply correctly the law of set-offs when it concluded that the plaintiff in that case suffered no damages. The Receiver argues that the only way the Pagnotta court could have concluded that the plaintiff suffered no damages is by setting off the judgment debtor's debt against the damages allegedly inflicted upon the judgment debtor by the Marshal as a result of the Marshal's out-of-City execution. The Receiver argues, in effect, that reliance on the law of set-offs was the unspoken reasoning of Pagnotta. The Receiver then argues that the law of set-offs could not result in a finding of no damages to the judgment debtor because the Marshal wrongfully executed on the debtor's bank accounts and under the law of set-offs "a creditor who obtains a debtor's property wrongfully is not entitled to set off their liability for that wrongful conduct against a claim that the creditor holds against the debtor." Lines v. Bank of Am. Nat. Trust & Sav. Ass'n, 743 F. Supp. 176, 183 (S.D.N.Y. 1990). The Receiver is correct in one sense, which is that the law of set-offs has no applicability to this case. However, it is inapplicable not because there was alleged wrongful conduct by the Marshal. Rather, a key requirement for a set-off is mutuality of debts between the parties, which is absent in this case, as it was in Pagnotta, because at no point did GTR owe a mutual debt to FutureNet just as FutureNet owed to GTR. See Jordan v. Nat'l Shoe & Leather Bank, 74 N.Y. 467, 474 (1878) ("[N]one but mutual debts could be set-off against one another, and that by mutual debts was meant, those which, on each side, were, at the time, due and payable[.]"); Lines, 743 F. Supp. at 183 ("Mutuality is not present when the creditor has no debt to set-off against the debtor except the liability for the wrongful conversion."). For that reason, the law of set-offs is inapplicable in this case because there was no mutuality of debts between GTR and FutureNet and because the creditor's and the Marshal's alleged wrongful conversion alone cannot satisfy the requirement of mutuality. However, in any event, and contrary to the Receiver's arguments, neither Pagnotta itself nor the defendants' arguments before this Court purported to rest on the proposition that the Receiver sustained no damages because of an application of the law of set-offs. Rather, the reasoning of Pagnotta rested on the principle that a plaintiff has not suffered any tort damages, which is a necessary element of a tort suit, when the plaintiff is a judgment debtor and the alleged converted funds were seized to satisfy a valid judgment against that judgment debtor. For the same reasons, the Receiver suffered no damages in this case because the funds seized were used to satisfy a valid judgment resulting from a valid debt. This conclusion does not depend upon the law of set-offs, but rather results from a straightforward application of the usual principles of tort damages.

debt that the plaintiff does not dispute is valid. In both cases, the undisputed facts are that the Marshal acted on the basis of a confession of judgment signed by the plaintiff and a judgment entered by the state court. In this case, as in Pagnotta, the Receiver has not made any showing of damages to the Receiver. Indeed, to hold that the Marshal is personally liable would amount to the Marshal's paying FutureNet's otherwise valid debt. The cases are indistinguishable, and therefore the Marshal is entitled to summary judgment.

Further, with respect to GTR's motion, a private entity on whose behalf a marshal acts is generally liable to the same extent the marshal is liable. See Treiber, 258 N.Y.S. at 207. There are no cases that hold that a private entity can be liable for causing a bank account to be levied upon when the judgment is valid and there are no damages alleged. In this case, the state court twice refused to vacate the judgment, and the Receiver does not point to any damages because the debt FutureNet owed to GTR was valid and the funds that were seized satisfied that valid debt. Therefore, for the same reasons that the Marshal is entitled to summary judgment because the Receiver does not have a valid claim under New York law on the facts of this case, GTR is also entitled to summary judgment.[3]

---

[3] Because the defendants' motions for summary judgment are granted on the grounds that the Receiver's claims fail as a matter of New York law, the

**V.**

GTR seeks attorneys' fees from the Receiver because the Merchant Agreement between GTR and FutureNet states that the FutureNet "shall pay to GSL [GTR Source, LLC] all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreements and the enforcement thereof, and (b) the enforcement of GSL's remedies set forth herein, including but not limited to court costs and attorneys' fees." Reich Aff., Ex. 1, at 5. In response, the Receiver argues that FutureNet has already agreed to pay attorney's fees in the confession affidavit at a fixed percentage of the principal amount of the judgment, and that the judgment itself awarded GTR attorney's fees in the amount of $23,962.25. Additionally, the Receiver argues that any claims against FutureNet for attorney's fees must be brought in Michigan.

GTR has not carried its burden at summary judgment of demonstrating that this proceeding is a proper venue for the defendants to pursue attorney's fees under the terms of the Merchant Agreement. Additionally, GTR has not carried its burden that this proceeding is one concerning "the enforcement of GSL's remedies set forth herein." See Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008) ("This generally means

---

Court need not address whether the Receiver's claims are barred by the res judicata effects of the state court proceedings in Orange County.

that a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."). Therefore, GTR's motion for attorney's fees under the terms of the Merchant Agreement is denied at this time without prejudice.

## CONCLUSION

The Receiver's motion for summary judgment is **denied**. The defendants' motions for summary judgment are **granted** and the Complaint is **dismissed**. GTR's motion for attorney's fees is **denied without prejudice**. The Clerk is directed to close Docket Numbers 27, 34, and 39.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **December 26, 2019**          **___/S/ John G. Koeltl___**
                                  **John G. Koeltl**
                         **United States District Judge**